UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GINA CARPENTER,

                    Plaintiff,                          9:15-CV-1269
                                                                (GTS/CFH)

v.

CRAIG APPLE, Albany County Sheriff in his official
and individual capacities; ALBANY COUNTY
SHERIFF'S OFFICE; COUNTY OF ALBANY;
ALBANY COUNTY CORRECTIONAL FACILITY;
AUGUSTUS ROBERSON, III, Corrections Officer in
his official and individual capacities; and "JANE DOE" and
"JOHN DOE," Fictitious Names of Persons Employed
by the Albany County Sheriff's Department, the
Identities of Whom are Unknown,

                    Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF TREVOR W. HANNIGAN          TREVOR W. HANNIGAN, ESQ.
  Counsel for Plaintiff
311 State Street
Albany, New York 12210

METH LAW OFFICES, P.C.                  MICHAEL D. METH, ESQ.
  Co-Counsel for Plaintiff
10 Moffatt Lane, Suite 2
P.O. Box 560
Chester, New York 10918

ADAM G. GIANGRECO, ATTORNEY-AT-LAW    ADAM G. GIANGRECO, ESQ.
  Counsel for Defendant Craig Apple
4217 Court Royale, No. 10
Schenectady, New York 12304

GOLBERG SEGALLA, LLP                    JONATHAN
                                      BERNSTEIN, ESQ.
  Co-Counsel for Defendant Craig Apple       CHELSEA E. KEENAN, ESQ.
8 Southwoods Blvd., Suite 300
Albany, New York 12211

HON. DANIEL C. LYNCH                                    MICHAEL L. GOLDSTEIN, ESQ.
Albany County Attorney                                  SIA Z. GOOGAS, ESQ.
   Counsel for Defendants Albany County Sheriff's Office,   Assistant Albany County
Attorneys
   County of Albany, Albany County Correctional Facility,
   Augustus Roberson, III, and Jane and John Does
112 State Street
Albany, New York 12207

BURKE, SCOLAMIERO, MORTATI & HURD, LLP                  JEFFREY E. HURD, ESQ.
   Co-Counsel for Defendants County of Albany and        JUDITH B. AUMAND, ESQ.
   Albany County Correctional Facility
7 Washington Square
Albany, New York 12205

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Gina Carpenter ("Plaintiff")

against Craig Apple (in his individual capacity and official capacity as the Albany County

Sheriff), the Albany County Sheriff's Office, the County of Albany in the State of New York, the

Albany County Correctional Facility, Augustus Roberson, III (in his individual capacity and

official capacity as a corrections officer), and Jane and John Does, is Defendant Apple's motion

for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 43.)  For the reasons

set forth below, Defendant Apple's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows.  (Dkt. No. 1.)

Plaintiff is a prisoner who was formally incarcerated at the Albany County Correctional Facility

("ACCF") during the relevant time period of this action.  (*Id.*, ¶ 7.)  On July 30, 2014, at

approximately 10:00 a.m., Plaintiff was sexually assaulted and battered by Defendant Augustus

Roberson, a corrections officer employed by ACCF, and who was known to the prisoners as "Gus." (*Id.*, ¶ 14.) On this date, Plaintiff was a "runner," which is an inmate assigned to perform various functions on a specific tier in the prison, including, among other things, cleaning and delivering food trays. (*Id.*, ¶¶ 15-16.) While Plaintiff was waiting to serve breakfast on her assigned tier with another runner named Ms. Banks, Ms. Banks made an inappropriate comment towards Defendant Roberson that she "would so give him some." (*Id.*, ¶ 17.) Defendant Roberson did not react to Ms. Banks's comment and Plaintiff said nothing. (*Id.*)

Sometime later that day, Defendant Roberson called Plaintiff out of her cell and told her that a woman needed help using the telephone. (*Id.*, ¶ 18.) Plaintiff complied and proceeded to stand on her side of the locked gate and showed the woman how to use the telephone. (*Id.*) Plaintiff then told Defendant Roberson that she was done and ready to go back into her cell. (*Id.*) However, Defendant Roberson told Plaintiff that she needed to clean the correctional officers' bathroom. (*Id.*) The correctional officers' bathroom is located outside of the main tier area, and none of the common areas, including the hallways on the tier or anywhere else, are monitored by cameras. (*Id.*, ¶ 19.) Plaintiff proceeded to get cleaning supplies and gloves; however, when she arrived at the bathroom, she noticed that it was not dirty or messy and that the garbage was empty. (*Id.*, ¶ 20.) The bathroom is small and there had been a fire in it in the past. (*Id.*, ¶ 21.) Wires hung from where a lightbulb used to be, which was never replaced. (*Id.*) The only source of light came from the door being open. (*Id.*)

Plaintiff entered the bathroom and began her cleaning responsibilities. (*Id.*, ¶ 22.) While she was cleaning the toilet, she was startled by Defendant Roberson, who entered the bathroom behind her. (*Id.*) Defendant Roberson told Plaintiff to "turn around and pull your pants down."

(*Id.*, ¶ 23.)  Plaintiff was wearing a bra, underwear, and her jumpsuit.  (*Id.*)  Defendant Roberson was fully clothed at the time.  (*Id.*)  Plaintiff responded to Defendant Roberson by telling him "no."  (*Id.*)  Defendant Roberson then threatened Plaintiff, stating, "[Y]ou're going to do what I tell you to do.  I'll beat the shit out of you and pepper-spray you and call a code and tell them you attacked me."  (*Id.*)  Defendant Roberson then proceeded to forcibly grab Plaintiff by her hair and shove her into the metal toilet.  (*Id.*, ¶ 24.)  Plaintiff's knees violently fell on top of the toilet and her face almost hit the wall.  (*Id.*)  Plaintiff then heard Defendant Roberson's keys hit the floor when he dropped his pants.  (*Id.*)  Defendant Roberson penetrated Plaintiff's vagina. (*Id.*)  Defendant Roberson never shut the door.  (*Id.*, ¶ 25.)  Plaintiff is unaware if Defendant Roberson ejaculated but he made sounds as though he did.  (*Id.*)  Defendant Roberson did not talk to Plaintiff.  (*Id.*)  Plaintiff did not say anything to Defendant Roberson.  (*Id.*)

When Defendant Roberson was finished, he threatened Plaintiff that she had better not tell anyone.  (*Id.*, ¶ 26.)  Plaintiff went back to her cell.  (*Id.*, ¶ 27.)  When she sat on the toilet to wipe herself, she noticed that she was bleeding.  (*Id.*)  Plaintiff later learned that her labia was significantly torn and that she would need surgery to repair it.  (*Id.*, ¶ 33.)  Plaintiff communicated to a female correctional officer by the name of Carol Batcher that something had happened and she needed to talk to somebody.  (*Id.*, ¶ 28.)  Plaintiff wanted Officer Batcher to contact her attorney.  (*Id.*)  Plaintiff tried to hang herself shortly thereafter and was put on suicide watch.  (*Id.*)  On or about August 5, 2014, Plaintiff reported the sexual assault to the Office of the Albany County District Attorney and Deputy Chief Montleone of the Office of the Albany County Sheriff.  (*Id.*, ¶ 29.)  Plaintiff was assured that this matter would be investigated but, to date, no formal decision has been published regarding her complaint.  (*Id.*)

After Plaintiff's sexual assault became known, Plaintiff was bullied by a correctional officer whom everyone called "Jack." (*Id.*, ¶ 30.) At one point, Jack was referring to all of the prisoners as "fucking whores" and then called Plaintiff over to him and said, "[S]o what's this I hear about my friend Gus? What are you and your friend saying about him? I know what you're going down to medical for." (*Id.*) Jack was referring to the lab work that the administration wanted Plaintiff to have done. (*Id.*) Plaintiff felt uncomfortable, terrified, and intimidated by Jack's comments and questions. (*Id.*) The administration wanted Plaintiff's lab work completed after the sexual assault became known. (*Id.*, ¶ 31.) No physical exam of Plaintiff's vagina was performed. (*Id.*) Although Plaintiff had to submit to the lab work and questioning, nothing was kept confidential and everyone in ACCF knew what was going on and why Plaintiff was there. (*Id.*) After the administration got the information that they needed, Plaintiff was left to deal with the employees of ACCF, including the correctional officers, on her own. (*Id.*)

ACCF fails to provide any privacy for female inmates while they are showering or disrobing. (*Id.*, ¶ 37.) Male correctional officers do not announce their presence when necessary. (*Id.*) They walk into the prisoners' bathrooms without first announcing "man on the tier," regardless of whether female inmates are showering and/or using the toilet. (*Id.*) Subsequent to the violent sexual assault, Defendant Does, in an attempt to discredit and intimidate Plaintiff, released her medical history without her authorization and/or consent to the members of the Albany County Sheriff's Office, causing her to suffer further embarrassment and lack of privacy. (*Id.*, ¶ 38.)

After certain efforts were made by her attorney, and in cooperation with the Office of the New York State Attorney General, Plaintiff was transferred to Rensselaer County Jail on August

22, 2014. (*Id.*, ¶ 32.) Since July 30, 2014, Plaintiff suffers from constant nightmares. (*Id.*, ¶ 34.) She wakes up with night sweats and has to take a shower. (*Id.*) She has difficulty showering and toileting because male correctional officers work on the unit. (*Id.*) She wakes up in the morning and finds herself under her bunk or on the floor and has no recollection of how she got there. (*Id.*) She is startled and becomes panicked by the sounds of the correctional officers' keys and radios. (*Id.*) She cannot look at the metal toilet in her cell and has obtained permission for an extra towel to keep it covered. (*Id.*) Plaintiff treats with a sexual assault counselor and mental health therapist. (*Id.*)

Based upon the foregoing allegations, Plaintiff asserts the following twelve claims: (1) a claim that the actions of Defendants Apple, Roberson, Albany County, the Albany County Sheriff's Office, and ACCF resulted in Plaintiff's violent sexual assault and physical and psychological injuries, which constitute cruel and unusual punishment *per se* in violation of her rights under the Eighth Amendment; (2) a claim that Defendants Apple, the Albany County Sheriff's Office, and ACCF acted with deliberate indifference toward Plaintiff's medical and mental health needs, which amounted to cruel and unusual punishment in violation of her rights under the Eighth Amendment; (3) a claim that the actions of Defendants Apple, Roberson, Albany County, the Albany County Sheriff's Office, and ACCF resulted in Plaintiff's violent sexual assault and physical and psychological injuries, which deprived her of her liberty and right to be secure, in violation of the Fourteenth Amendment; (4) a claim that Defendants Apple, the Albany County Sheriff's Office, Albany County, and ACCF severely compromised Plaintiff's personal safety and welfare while she was an inmate at ACCF in violation of N.Y. Correct. Law § 500-b; (5) a claim that Defendant Roberson violated N.Y. Penal Law §§

130.05(3)(e)-(f) when he sexually assaulted Plaintiff; (6) a claim that Defendant Roberson

falsely imprisoned Plaintiff in the correctional officers' bathroom when he sexually assaulted

her; (7) a claim that Defendant Roberson battered Plaintiff, which resulted in her physical

injuries; (8) a claim that Defendant Roberson assaulted Plaintiff when he threatened her in the

correctional officers' bathroom, thereby putting her in fear of imminent harmful and offensive

contact; (9) a claim that Defendants Apple, the Albany County Sheriff's Office, Albany County,

and ACCF were negligent in their supervision of their employees; (10) a claim that Defendants

Apple, Does, the Albany County Sheriff's Office, and Albany County violated 7 N.Y.C.R.R. §

5.24 when Defendant Does disseminated information from Plaintiff's medical history without

her authorization; (11) a claim that all Defendants intentionally inflicted emotional distress upon

Plaintiff through their respective actions, inactions and/or deliberate indifference; and (12) a

claim that all Defendants negligently inflicted emotional distress upon Plaintiff when they

breached their respective duties to take adequate and appropriate steps to prevent and/or

remediate the sexual assault as well as the events that transpired after it. (*Id.*, ¶¶ 46-141.)

### B.     The Parties' Briefing on Defendant Apple's Motion

#### 1.     Defendant Apple's Memorandum of Law

Generally, in his memorandum of law, Defendant Apple asserts three arguments. (Dkt.

No. 43, Attach. 1 [Def. Apple's Mem. of Law].)

First, Defendant Apple argues that he is liable for only his alleged unconstitutional

conduct, and not for the conduct of his subordinates, because, in *Ashcroft v. Iqbal*, 556 U.S. 662,

667 (2009), the Supreme Court rejected the theory of "supervisor liability" in the context of

Section 1983 actions.  (*Id.* at 14-15.)[1]  Furthermore, Defendant Apple argues that Plaintiff has

not alleged facts plausibly suggesting that he, or anyone else besides Defendant Roberson, was

involved in sexually assaulting her.  (*Id.* at 16.)  More specifically, Defendant Apple argues that

Plaintiff has failed to allege that he directed, condoned, or otherwise authorized the assault.  (*Id.*)

Although Plaintiff alleges in her ninth cause of action that "Defendants knew about the sexual

assault[,]" Defendant Apple argues that this allegation is wholly conclusory and, in any event, an

allegation of mere knowledge is insufficient under *Iqbal*'s pleading requirements.  (*Id.*)

Similarly, Defendant Apple argues that any claim against him for failing to implement

and carrying out "the goal of preventing sexual abuse and/or sexual harassment in its facilities"

should be construed as a claim against him in his official capacity.  (*Id.* at 17.)  In turn,

Defendant Apple argues that a claim against him in his official capacity should be dismissed

because any such claim is really a claim against the County of Albany as the real party in interest

and is therefore duplicative. (*Id.*)

Second, Defendant Apple argues that, in the event that the Court finds that Plaintiff has

stated a claim against him under a theory of supervisor liability, he is nonetheless entitled to

qualified immunity because an alleged violation of an inmate's constitutional rights under the

factors announced in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), was not clearly

established at the time of the alleged incident.[2]  (*Id.* at 18.)  Specifically, Defendant Apple argues

---

[1]        Page citations refer to the page numbers used on CM/ECF rather than the actual
page numbers contained in the parties' respective motion papers.

[2]        The five *Colon* factors are as follows:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation

that there is a split among the U.S. Courts of Appeals, as well as among the district courts in this

Circuit, regarding the viability of the *Colon* factors, and in particular supervisory liability, after

the Supreme Court's decision in *Iqbal*.  (*Id.* at 19-20.)

Third, and finally, Defendant Apple argues that Plaintiff's state law claims fail as a

matter of law.  (*Id.* at 24.)  Specifically, with regard to Plaintiff's fourth cause of action claiming

a violation of N.Y. Correct. Law § 500-b, Defendant Apple argues that this claim is barred by the

governing one-year statute of limitations because it accrued, at the very latest, on August 22,

2014, when Plaintiff was transferred to the Rensselaer County Jail, and she did not commence

this action until October 22, 2015.  (*Id.*)

With regard to Plaintiff's ninth cause of action claiming negligent supervision, Defendant

Apple argues that Plaintiff has failed to allege facts plausibly suggesting that he knew that

Defendant Roberson had (a) a plan to sexually assault Plaintiff, or (b) any kind of propensity for

committing such acts.  (*Id.* at 27.)

With regard to Plaintiff's tenth cause of action claiming a violation of 7 N.Y.C.R.R. §

5.24, Defendant Apple argues that this regulation does not provide a private right of action

because it states that "[n]othing in this section shall be construed as creating a private right of

---

through a report or appeal, failed to remedy the wrong, (3) the
defendant created a policy or custom under which unconstitutional
practices occurred, or allowed the continuance of such a policy or
custom, (4) the defendant was grossly negligent in supervising
subordinates who committed the wrongful acts, or (5) the
defendant exhibited deliberate indifference to the rights of inmates
by failing to act on information indicating that unconstitutional
acts were occurring.

*Colon*, 58 F.3d at 873.

action for an individual who is the subject of these records or his/her personal representative." (*Id.* [quoting 7 N.Y.C.R.R. § 5.24(d)].) Even if Plaintiff could pursue a private right of action under this regulation, Defendant Apple argues that Plaintiff has failed to allege the identities of the persons or entities to which her medical records were impermissibly released or that he had any involvement in disseminating the records. (*Id.* at 28.) Instead, Defendant Apple argues, Plaintiff merely alleges that he was responsible for supervising "Defendant Does" but fails to allege how his supervision was insufficient. (*Id.*) In any event, Defendant Apple argues that case precedent establishes that he cannot be held vicariously liable for the acts of his subordinates in this context. (*Id.*)

With regard to Plaintiff's eleventh cause of action claiming intentional infliction of emotional distress ("IIED"), Defendant Apple argues that this claim is barred by the governing one-year statute of limitations because it accrued, at the very latest, on August 22, 2014, when Plaintiff was transferred to the Rensselaer County Jail, and she did not commence this action until October 22, 2015. (*Id.* at 29.) In any event, Defendant Apple argues that Plaintiff has failed to allege facts plausibly suggesting that he was directly involved in the alleged assault or that he ordered or condoned it. (*Id.* at 30.)

With regard to Plaintiff's twelfth cause of action claiming negligent infliction of emotional distress ("NIED"), Defendant Apple argues that Plaintiff has failed to allege facts plausibly suggesting that he was directly involved in the alleged assault or that he ordered or condoned it. (*Id.* at 31.) Furthermore, Defendant Apple argues that, although Plaintiff alleges that he failed to "remediate the sexual assault," there is no allegation that this left Plaintiff exposed to unreasonable risk of bodily harm. (*Id.*) While Plaintiff alleges that Defendant

Roberson was the lone officer supervising the tier of female inmates, Defendant Apple argues

that this, in and of itself, does not plausibly suggest that Plaintiff was exposed to an unreasonable

risk of bodily harm, especially because she has failed to allege that Defendant Roberson had a

history of sexual assault or a propensity for such behavior. (*Id.* at 31-32.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Apple's motion, Plaintiff asserts six arguments.

(Dkt. No. 44 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that she has alleged facts plausibly suggesting that Defendant

Apple was personally involved in violating her constitutional rights under the *Colon* factors for

the following four reasons: (a) despite knowledge of Defendant Roberson's inappropriate sexual

conduct with female inmates, Defendant Apple allowed Defendant Roberson to remain on staff

as the only male correctional officer with unsupervised and unfettered access to female inmates;

(b) despite Defendant Apple's knowledge of the repeated pattern of sexual abuse of female

inmates at ACCF, he continued to allow Defendant Roberson to have unsupervised access to

female inmates; (c) Defendant Apple, in his capacity as Albany County Sheriff, is responsible

for the creation of policies at ACCF but has failed to implement policies that would prevent

sexual abuse at the prison despite knowledge of past incidents of sexual violence against female

inmates (and has publicly acknowledged at least one such incident in which he deemed the

victim's account "credible"); and (d) Defendant Apple's failure to adopt policies that would

prevent the sexual assault of female inmates is indicative of his deliberate indifference,

acquiescence, and/or tolerance of such conduct. (*Id.* at 13-18.)

Second, Plaintiff argues that Defendant Apple is not entitled to qualified immunity because (a) qualified immunity is available only to individuals sued in their individual capacity, and (b) Defendant Apple's conduct violated Plaintiff's clearly established right to be free from cruel and unusual punishment under the Eighth Amendment for the reasons stated above in Plaintiff's first argument. (*Id.* at 19-20.) Furthermore, Plaintiff argues that she was deprived of medical care when, after being violently attacked by Defendant Roberson, she was not provided with appropriate medical treatment, including an examination, evaluation, and the surgery required to repair her labia. (*Id.* at 20-21.)

Third, Plaintiff argues that courts in this Circuit have applied the limitations of *Iqbal* to the *Colon* factors only in cases involving discriminatory intent. (*Id.* at 22.) Otherwise, Plaintiff argues, the *Colon* factors have remained intact and, because discriminatory intent is not relevant to the claims in this case, the Court should apply the factors when considering the issue of supervisory liability. (*Id.* at 22-24.)

Fourth, Plaintiff argues that she has alleged facts plausibly suggesting a claim for NIED against Defendant Apple because she has pled as follows: (a) he owed a duty of care to her as a prisoner under the custody and control of ACCF, (b) he breached his duty by failing to (i) take adequate and appropriate steps to prevent and/or remediate the sexual assault, (ii) provide adequate supervision for female inmates despite knowledge of past sexual abuse by correctional officers, (iii) implement policies and procedures to prevent sexual assault at ACCF, and (iv) supervise and train the correctional officers, (c) he failed to conduct an adequate investigation after the sexual assault, (d) he allowed other male correctional officers to threaten Plaintiff that caused her to fear for her safety, and (e) he failed to provide Plaintiff with adequate medical care

which unreasonably endangered her safety. (*Id.* at 25-26.) Furthermore, Plaintiff argues that she was not required to allege that Defendant Apple's conduct was extreme and outrageous because New York State courts have recently decided that extreme and outrageous conduct is no longer an element of NIED. (*Id.* at 24-25.)

Fifth, Plaintiff argues that she has alleged facts plausibly suggesting a claim for negligent hiring, retention, and/or supervision against Defendant Apple. (*Id.* at 26.) Specifically, Plaintiff argues that she has alleged that Defendant Apple was aware of Defendant Roberson's propensity to commit sexual assaults as well as a general pattern of sexual abuse in New York State Correctional Facilities, which has resulted in significant publicity and successful lawsuits. (*Id.* at 27.) Furthermore, Plaintiff argues that she has alleged that, despite this knowledge, Defendant Apple allowed Defendant Roberson to be the only unsupervised male correctional officer in charge of Plaintiff's tier inside the prison, that Defendant Apple never disciplined Defendant Roberson, and Defendant Roberson remains gainfully employed. (*Id.*)

Sixth, and finally, Plaintiff argues that her claim under N.Y. Correct. Law § 500-b and her claim for IIED are not barred by the one-year statute of limitations under New York Civil Practice Law and Rules ("CPLR") § 215 because the one-year-and-ninety-day statute of limitations under N.Y. Gen. Mun. Law § 50-i should govern. (*Id.* at 27-28.) More specifically, Plaintiff argues that, because she commenced this action against a municipality, and because Defendant Apple is an officer and employee of the municipality, N.Y. Gen. Mun. Law § 50-i governs the timeliness of her claims. (*Id.*)

### 3. Defendant Apple's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendant Apple asserts six arguments. (Dkt. No. 48 [Def. Apple's Reply Mem. of Law].)

First, Defendant Apple argues that Plaintiff inappropriately relies on the *Colon* factors because they are no longer viable after the Supreme Court's decision in *Iqbal*. (*Id.* at 5.) In any event, Defendant Apple argues that Plaintiff has failed to allege facts plausibly suggesting his direct involvement in any of the alleged events that form the basis for her claims in this matter. (*Id.*) For example, Defendant Apple argues that Plaintiff has failed to allege that she had any direct contact with him about not receiving appropriate medical care or that he created a policy and custom under which unconstitutional practices occurred. (*Id.*) Moreover, Defendant Apple argues that Plaintiff has failed to set forth the names and dates of persons alleged to have been subject to misconduct by Defendant Roberson before the incident in question, or that Defendant Apple had knowledge of any such events, such knowledge would have put him on notice of Defendant Roberson's alleged propensity to engage in misconduct. (*Id.* at 6.) Similarly, Defendant Apple argues that Plaintiff has failed to identify how the Sheriff Department's training was insufficient or the manner in which Defendant Apple failed to train the corrections officers. (*Id.*)

Second, Defendant Apple reiterates his argument that claims against him in his official capacity should be dismissed as redundant because any such claims are really claims against the County of Albany. (*Id.* at 7.) With respect to the claims asserted against him in his individual capacity, Defendant Apple reiterates his argument that he is entitled to qualified immunity because (a) principles of vicarious liability do not apply in § 1983 claims, and (b) it is not clearly established in the Second Circuit whether supervisory liability is still viable under the *Colon* factors after the Supreme Court's decision in *Iqbal*. (*Id.* at 8-9.)

Third, Defendant Apple argues that Plaintiff's NIED claim must be dismissed for the following three reasons: (a) although the Second Department has ruled that extreme and outrageous conduct is no longer an element of a NIED claim, the Third Department continues to require such a showing; (b) Plaintiff has failed to allege facts plausibly suggesting that Defendant Apple's conduct endangered her or that he was even involved in the alleged incident; and (c) Defendant Apple did not owe a special duty to Plaintiff. (*Id.* at 9-10.)

Fourth, Defendant Apple reiterates his argument that Plaintiff's negligent supervision/retention claim should be dismissed because she has failed to allege facts plausibly suggesting that he knew that Defendant Roberson had (a) a plan to sexually assault Plaintiff, or (b) any kind of propensity for committing such acts. (*Id.* at 10.) Furthermore, Defendant Apple argues that the most Plaintiff has alleged is that another incident occurred at ACCF on the same date as the incident in question but the alleged incident, in and of itself, was insufficient to put him on notice of Defendant Roberson's alleged propensity to commit sexual assaults. (*Id.* at 10-11.)

Fifth, Defendant Apple argues that the statute of limitations period under N.Y. Gen. Mun. Law § 50-i does not govern Plaintiff's claims for IIED and a violation of N.Y. Correct. Law § 500-b against him because CPLR § 215 specifically states that "an action against a sheriff . . . upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty . . . shall be commenced within one year." (*Id.* at 11.)

Sixth, and finally, Defendant Apple argues that Plaintiff has failed to oppose his arguments that she has failed to allege facts plausibly suggesting an IIED claim and that he was in violation of N.Y. Correct. Law § 500-b and 7 N.Y.C.R.R. § 5.24. (*Id.* at 12.) Accordingly, Defendant Apple argues that the Court should dismiss these claims due to abandonment. (*Id.*)

## II. RELEVANT LEGAL STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases); *accord*, *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Accordingly, the Court will review Defendant Apple's motion under the standard applicable to a motion to dismiss.

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*.

at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id*. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3]

---

[3]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotation marks and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

-19-

**III.    ANALYSIS**

**A.    Whether Plaintiff Has Alleged Facts Plausibly Suggesting Defendant Apple's Personal Involvement in the Alleged Violation of Her Constitutional Rights Under the Eighth and Fourteenth Amendments**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated below.

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). "[A] Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered." *Austin v. Pappas*, 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (internal quotation marks and citation omitted). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cty. v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

As an initial matter, the Court must address the parties' respective arguments regarding the applicability of the *Colon* factors post-*Iqbal*. The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test, including the gross negligence prong, after [*Iqbal*][.]"); *Hogan v.*

*Fischer*, 738 F.3d 509, 519 n.13 (2d Cir. 2013) ("We express no view on the extent to which the Supreme Court's decision in [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violation[.]") (internal quotation marks and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("Although the Supreme Court's decision in [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal*'s impact on *Colon* in this case[.]"); *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) (noting "considerable skepticism" on whether all *Colon* factors survived *Iqbal* but declining to decide the issue); *cf. Vincent v. Yelich*, 718 F.3d 157, 173 (2d Cir. 2013) ("A supervisory official may be liable in an action brought under § 1983 if he "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.") (citing *Colon*, 58 F.3d at 873). Some district courts have interpreted *Iqbal* to mean that the second, fourth, fifth, and part of the third *Colon* factors are no longer viable bases for liability in any context.[4] The majority of district

---

[4]     *See, e.g., McNair v. Kirby Forensic Psychiatric Ctr.,* 2010 WL 4446772, at *6 (S.D.N.Y., Nov. 05, 2010) ("[O]nly two *Colon* categories survive after *Iqbal*–(1) a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation, and part of (3) if that supervisor creates a policy or custom under which unconstitutional practices occurred. . . . The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated–situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."); *Bellamy v. Mount Vernon Hosp.*, 07-CV-1801, 2009 WL 1835939, at *4, *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third Colon categories pass *Iqbal*'s muster–a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated–situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."); *Joseph v. Fischer*, 08-CV-2824, 2009 WL 3321011, at *14 (S.D.N.Y. Oct. 8, 2009) ("[U]nder *Iqbal*, . . . [a] defendant is not liable . . . if the defendant's failure to act deprived the plaintiff of his or her constitutional

courts, however, have held that all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent.[5] Indeed, courts within this District have continued to apply the *Colon* factors post-*Iqbal*.[6]

Here, the Court will follow the majority view and apply the *Colon* factors in considering

right."); *Newton v. City of New York*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims . . . have not survived the Supreme Court's recent decision in [*Iqbal*].").

[5] *See  Drew v. City of New York*, 16-CV-0594, 2016 WL 4533660, at *12 (S.D.N.Y. Aug. 29, 2016) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments, the personal involvement analysis set forth in *Colon* may still apply."); *Liner v. Fischer*, 11-CV-6711, 2013 WL 3168660, at *7 (S.D.N.Y. June 24, 2013) (agreeing with the "majority view" that where the constitutional claim does not require a showing of discriminatory intent, the personal-involvement analysis in *Colon* should still apply); *Alli v. City of New York*, 11-CV-7665, 2012 WL 4887745, at *6 (S.D.N.Y. Oct. 12, 2012) ("[W]here the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in *Colon* should still apply."); *Toliver v. N.Y.C. Dep't of Corr.*, 10-CV-5804, 2012 WL 5426658, at *4 (S.D.N.Y. Oct. 10, 2012) ("[T]he majority view is where the constitutional claim does not require a showing of discriminatory intent . . . the personal involvement analysis set forth in [*Colon*] may still apply."); *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in [*Colon*] may still apply."); *Qasem v. Toro*, 737 F. Supp. 2d 147, 151-52 (S.D.N.Y. 2010) (applying *Colon* factors in analyzing inmate's claims for violation of her Eighth and Fourteenth Amendment rights against supervisory officials after she was allegedly raped by corrections officer).

[6] *See, e.g.*, *Brown v. Oneida Cty.*, 15-CV-0849, 2016 WL 4275727, at *8 n.4 (N.D.N.Y. Aug. 12, 2016) (Kahn, J.) ("The Court assumes here that *Colon* remains good law."); *Carter v. Bezio*, 12-CV-1746, 2015 WL 1400555, at *5 n.2 (N.D.N.Y. Mar. 26, 2015) (Treece, M.J.) ("[T]his Court, until instructed to the contrary, continues to apply the entirety of the five factor *Colon* test."); *Aron v. Becker*, 48 F. Supp. 3d 347, 379 n.18 (N.D.N.Y. 2014) (McAvoy, J.) ("[T]his Court concludes that because [it] is unclear whether *Iqbal* overrules or limits *Colon*, and in the absence of contrary direction from the Second Circuit, the Court will continue to apply those factors."); *De Ratafia v. Cty. of Columbia*, 2013 WL 5423871, at *8 (N.D.N.Y. Sept. 16, 2013) (Mordue, J.) ("[W]here the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in *Colon* should still apply."); *Powell v. Johnson*, 11-CV-1304, 2013 WL 2181268, at *5 (N.D.N.Y. May 20, 2013) (D'Agostino, J.) (applying *Colon* factors).

Plaintiff's claims against Defendant Apple.  Because the first *Colon* factor (i.e., direct

participation) is not alleged or asserted to apply, the Court will proceed to an analysis of the

remaining *Colon* factors.

### 1.    **The Second *Colon* Factor**

With respect to the second *Colon* factor, the Court finds that Plaintiff has failed to allege

facts plausibly suggesting that Defendant Apple failed to remedy the violation after being

informed of it through a report or appeal.  Specifically, Plaintiff argues that "Defendant Apple's

failure to promulgate policies to prevent further sexual abuse and assault, continuing to allow

Defendant Roberson unsupervised access to the female detainees despite knowledge of his past

sexual misconduct, and retention of Defendant Roberson as an employee, constitut[e] his failure

to remedy the wrong after learning of the violation." (Dkt. No. 44, at 15 [Pl.'s Opp'n Mem. of

Law].)  However, "[t]he reference in case law to an official who 'fails to remedy' a violation

logically applies only to ongoing, and therefore correctable, constitutional violations–not to a

specific event that is later subject to formal review by designated officials once the constitutional

violation has already concluded."  *Odom v. Calero*, 06-CV-15527, 2008 WL 2735868, at *7

(S.D.N.Y. July 10, 2008); *see also Burton v. Lynch*, 664 F. Supp. 2d 349, 362 (S.D.N.Y. 2009)

("A superintendent cannot 'remedy' a violation of constitutional rights which has already ceased

by ordering some change in prison conditions."); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524

(N.D.N.Y. 2008) (Hurd, J.) ("If the official is confronted with a violation that has already

occurred and is not ongoing, then the official will not be found personally responsible for failing

to 'remedy' a violation.").

Here, Plaintiff has failed to allege that her sexual assault was ongoing at the time Defendant Apple was informed of it. Furthermore, despite Plaintiff's argument to the contrary, Plaintiff has alleged that at least some corrective action was taken in the form of prohibiting Defendant Roberson to enter the female tiers of the prison. (Dkt. No. 1, ¶ 39 [Pl.'s Compl.] [alleging that "Defendant Roberson is not allowed on female tiers any longer"].)

2.     **The Third *Colon* Factor**

With respect to the third *Colon* factor, the Court finds that Plaintiff has (albeit barely) alleged facts plausibly suggesting that Defendant Apple allowed the continuance of a policy under which unconstitutional practices occurred for the reasons stated in her opposition memorandum of law. (Dkt. No. 44, at 16-18 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds that it is insufficient to merely allege that a policy of allowing unmonitored one-on-one interactions between a corrections officer and an inmate of different sexes is unconstitutional. (*Id.*, ¶ 39 [alleging that Defendant Roberson "was able to engage in such conduct because he was given unfettered and unsupervised access to female detainees by the supervisory defendants."] *See also Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) (rejecting "conclusion that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone"); *accord, Cash v. Cty. of Erie*, 654 F.3d 324, 336 (2d Cir. 2011). However, what nudges Plaintiff's allegations over the line from conceivable to plausible is the fact that she has alleged that Defendant Apple was on notice of previous incidents at ACCF involving male corrections officers having inappropriate sexual contact with female

detainees.  (Dkt. No. 1, ¶ 40 [Pl.'s Compl.].)[7]  Indeed, with respect to these past incidents,

Plaintiff alleges that "Defendant Apple has publicly stated that 'at least one victim's account was

credible[,]'" and that, despite his knowledge of this inappropriate behavior, he "failed to adopt

policies and procedures regarding circumstances w[h]ere male corrections officers are permitted

to be alone with female inmates."  (*Id.*)

### 3.     The Fourth *Colon* Factor

With respect to the fourth *Colon* factor, the Court finds that Plaintiff has failed to allege

facts plausibly suggesting that Defendant Apple was grossly negligent in his supervision of

Defendant Roberson.  Specifically, Plaintiff alleges that "Defendant Facility permitted

Defendant Roberson . . . to supervise female prisoners by himself and without female

supervision, in light of past allegations of sexual misconduct." (Dkt. No. 1, ¶ 51 [Pl.'s Compl.].)

"'[G]ross negligence' denotes a higher degree of culpability than mere negligence.  It is the kind

of conduct where the defendant has reason to know of facts creating a high degree of risk of . . .

harm to another and deliberately acts or fails to act in conscious disregard or indifference to that

risk."  *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).  This standard is satisfied when

"the plaintiff establishes that the defendant-supervisor was aware of a subordinate's prior

substantial misconduct but failed to take appropriate action to prevent future similar misconduct

before the plaintiff was eventually injured."  *Raspardo*, 770 F.3d at 117.

---

[7]     The Court notes that, below in Part III.A.3. of this Decision and Order, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that Defendant Apple knew of specific instances of past misconduct committed by Defendant Roberson.  As the Court indicates, this finding was rendered after considering another case in this District in which similar factual allegations were made against Defendant Roberson.  However, this finding (which regards the fourth *Colon* factor) is not inconsistent with the Court's finding with regard to the third *Colon* factor because, under the third *Colon* factor, Plaintiff's allegations are more broad, i.e., that Defendant Apple was on notice of more than one other incident at ACCF involving sexual misconduct by male corrections officers generally.

The Court agrees with Defendant Apple that Plaintiff has failed to allege facts plausibly suggesting that he knew of specific instances of past misconduct committed by Defendant Roberson. (Dkt. No. 48, at 6 [Def. Apple's Reply Mem. of Law].) The Court notes that it is aware of another action commenced against Defendants Roberson and Apple in this District, in which another female inmate incarcerated at ACCF alleged that Defendant Roberson sexually harassed her.[8] *See Smith v. Roberson*, 15-CV-0930, 2016 WL 1056588 (N.D.N.Y. Mar. 16, 2016) (Hurd, J.). These allegations would plausibly suggest that at some point in time Defendant Apple became aware of at least one other incident of sexual misconduct involving Defendant Roberson. However, the plaintiff in *Smith* alleged that Defendant Roberson harassed her on the same date (i.e., July 30, 2014) on which Plaintiff in the present action alleges that Defendant Roberson sexually assaulted her. It is unclear whether the events in *Smith* occurred before or after the events alleged in the present action.[9]

After carefully considering the allegations made in *Smith*, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that Defendant Apple had notice of any prior

---

[8]     The Court notes that it may take judicial notice of the existence of these allegations because they are contained in legal filings made in this court as well as recited in another court's opinion. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir.1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion–not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

[9]     Plaintiff in the present action alleges that Defendant Roberson sexually assaulted her at approximately 10:00 a.m. on July 30, 2014. (Dkt. No. 1, ¶ 14 [Pl.'s Compl.].) The plaintiff in *Smith*, however, does not allege what time of day that Defendant Roberson sexually harassed her. Rather, she alleges that the harassment "[t]hroughout the course of the day," "escalat[ing]" in "the evening." *Smith v. Roberson*, 15-CV-0930, Amended Complaint, ¶¶ 11, 12 (N.D.N.Y. filed Feb. 10, 2016).

sexual misconduct committed by Defendant Roberson and/or had a sufficient opportunity to reasonably respond to any such misconduct. *See Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir. 2002) (holding that supervisor's liability depended on showing that supervisor "knew or should have known that there was a high degree of risk that [subordinate would commit the violative conduct], but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury"); *Jones v. Superintendent of Attica Corr. Facility*, 10-CV-0823, 2012 WL 4464685, at *3 (W.D.N.Y. Feb. 3, 2012) ("Even interpreting plaintiff's allegations to suggest that he wrote Superintendent Conway about his safety concerns upon his transfer, given plaintiff's allegation that the assault occurred on the same day as his move into the housing block, it is not plausible that Superintendent Conway would have received plaintiff's letter prior to the assault."); *cf. Morris v. Eversley*, 205 F. Supp. 2d 234, 242 (S.D.N.Y. 2002) (Chin, J.) ("[Plaintiff] also alleges that defendants were grossly negligent in supervising their subordinates, because they had received prior complaints about Eversley–and yet failed to adequately monitor his actions such that the assault on Morris could occur.").

### 4.     The Fifth *Colon* Factor

With respect to the fifth *Colon* factor, the Court finds that, for the reasons stated above in Part III.A.2. of this Decision and Order, Plaintiff has (albeit barely) alleged facts plausibly suggesting that Defendant Apple exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that male corrections officers at ACCF were having inappropriate sexual contact with female detainees. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Policymakers' continued adherence to an approach that they know or should know has

failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action–the 'deliberate indifference'–necessary to trigger municipal liability."); *Cash*, 654 F.3d at 335-39 (concluding that, after plaintiff claimed she was raped by a sheriff's duty, a reasonable jury could have found that sheriff was deliberately indifferent to his duty to protect prisoners from sexual exploitation when, despite knowledge of at least one other incident involving sexual contact between a female prisoner and a male guard, he merely reiterated the facility's "no-contact" policy "unaccompanied by any proactive steps to minimize the opportunity for exploitation"); *Rivera v. Bonner*, No. 16-10675, 2017 WL 2872291, at *5 (5th Cir. July 6, 2017) (stating that "officials can be found deliberately indifferent if they fail to modify training and policies after sexual assault occurs in their facilities"); *accord*, *Tafoya v. Salazar*, 516 F.3d 912, 917 (10th Cir. 2008).

### B.      Whether Defendant Apple is Entitled to Qualified Immunity

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Plaintiff in her opposition memorandum of law.  (Dkt. No. 44, at 20-21 [Pl.'s Opp'n Mem. of Law].)

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotation marks omitted).  "A defendant will thus not be liable for damages 'if he did not violate clearly established law or if it was objectively reasonable for him to believe that he was not violating clearly established law.'" *Pugh v. Goord*, 571 F. Supp. 2d 477, 510

(S.D.N.Y. 2008) (quoting *Luna v. Pico*, 356 F.3d 481, 490 [2d Cir. 2004]). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (internal quotation marks omitted). For qualified immunity to bar suit at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (internal quotation marks and citations omitted).

It is clearly established that inmates have the right to be protected from sexual abuse, both at the hands of correctional officers and fellow inmates, and that prison officials violate inmates' constitutional rights by showing deliberate indifference to a substantial risk of sexual abuse "when the offical[s] know[ ] of and disregard[ ] an excessive risk" of that harm occurring. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Cash*, 654 F.3d at 335-37; *Varon v. Sawyer*, 04-CV-2049, 2006 WL 798880, at *2 (D. Conn. Mar. 25, 2006). "By now, the substantial risk of sexual assault in jails and prisons is well-documented and obvious." *Rivera*, 2017 WL 2872291, at *6 (citing 42 U.S.C. § 15601 [congressional finding in the Prison Rape Elimination Act of 2003 that "experts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison"]); *Cash*, 654 F.3d at 335 (citing N.Y. Penal Law § 130.05[3][e]-[f] and noting that "these laws recognize the moral certainty of guards confronting prisoners in sexually tempting circumstances with such a frequent risk of harm to

prisoners as to require a complete prohibition on any sexual activity"); *Morris*, 205 F. Supp. 2d at 242-43 (holding that prison officials are charged with knowledge of N.Y. Penal Law § 130.05). "Jail administrators are not permitted to 'bury their heads in the sand' and ignore these obvious risks to the inmate populations they have an affirmative duty to protect." *Rivera*, 2017 WL 2872291, at *6; *see also Burhans v. Lopez*, 24 F. Supp. 3d 375, 384-85 (S.D.N.Y. 2014) ("No reasonable official . . . could have believed that turning a blind eye to [a subordinate's sexual harassment] misconduct was consistent with clearly established law.").

Based upon the foregoing, the Court cannot find that Defendant Apple is entitled to qualified immunity at this early stage in the litigation and without the benefit of record evidence demonstrating whether Defendant Apple's conduct was objectively reasonable. *See Varon*, 2006 WL 798880, at *4 (denying qualified immunity to prison officials that allegedly failed to take corrective action to protect inmates after learning of past incidents of sexual abuse because "[w]hether the conduct of these defendants was reasonable in light of the situation confronting them cannot be assessed at this early stage in the litigation"); *accord*, *Morris*, 205 F. Supp. 2d at 243. This includes conduct related to Plaintiff's allegations that she did not receive appropriate medical treatment after being sexually assaulted. (Dkt. No. 1, ¶¶ 60-66 [Pl.'s Compl.].) *See Benjamin v. Schwartz*, 299 F. Supp. 2d 196, 201 (S.D.N.Y. 2004) ("A prisoner's Eighth Amendment right to be free from deliberate indifference to his serious medical needs is quite clearly established and has been for some time.").

Finally, the Court is unpersuaded by Defendant Apple's argument that he is entitled to qualified immunity because "it is not clearly established if supervisory liability exists in the Second Circuit [due to the conflict between *Iqbal* and *Colon*] and if it does, what the standard is

for a supervisor to be held liable[.]" (Dkt. No. 48, at 9 [Def. Apple's Reply Mem. of Law].)

Even if the Court were to find merit to this argument, the Court has found that the third *Colon*

factor applies in this case, which courts in this Circuit have found to be viable regardless of the

conflict surrounding this issue. *See*, *e.g.*, *Olutosin v. Lee*, 14-CV-0685, 2016 WL 2899275, at

*13 (S.D.N.Y. May 16, 2016) ("Courts appear to be in agreement that the third *Colon* factor

remains viable regardless of the underlying constitutional claim.").

### C. Whether Plaintiff's Claims Against Defendant Apple in His Official Capacity Should Be Dismissed as Redundant

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendant Apple's memorandum of law. (Dkt. No. 43, Attach. 1, at 17

[Def. Apple's Mem. of Law].) *See Stancati v. Cty. of Nassau*, 14-CV-2694, 2015 WL 1529859,

at *2 (E.D.N.Y. Mar. 31, 2015) ("[B]ecause the County is named in the Complaint, the claims

against Sheriff Sposato and Deputy Sheriff Gorey in their official capacities must be dismissed

as duplicative and redundant."); *Reid v. Nassau Cty. Sheriff's Dep't*, 2014 WL 4185195, at *11

(E.D.N.Y. Aug. 20, 2014) ("[T]he branches of the County defendants' motions seeking dismissal

of the consolidated plaintiffs' Section 1983 claims against Sheriff Sposato and the

Superintendent in their official capacity are granted and the consolidated plaintiffs' Section 1983

claims against Sheriff Sposato and the Superintendent are dismissed in their entirety with

prejudice as redundant to their claims against the County."); *Lipton v, Cty. of Orange, NY*, 315 F.

Supp. 2d 434, 452 (S.D.N.Y. 2004) (dismissing civil rights claims against county sheriff and jail

administrators in their official capacities because they were redundant to similar claims against

county).

**D.** **Whether Plaintiff's State Law Claims for IIED, NIED, Negligent Supervision, and for Violating N.Y. Correct. Law § 500-b Against Defendant Apple Are Time-Barred**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant Apple's memoranda of law. (Dkt. No. 43, Attach. 1, at 24, 29 [Def. Apple's Mem. of Law]; Dkt. No. 48, at 11 [Def. Apple's Reply Mem. of Law].) *See Trelly v. Cty. of Monroe*, 13-CV-6248, 2015 WL 471375, at *3 (W.D.N.Y. Feb. 4, 2015) (holding that statute of limitations period contained in CPLR § 215 governed intentional tort claims against sheriff rather than one-year and ninety-day limitations period); *McKenzie v. Cty. of Erie*, 12-CV-0912, 2013 WL 5348084, at *1 (W.D.N.Y. Sept. 23, 2013) ("[Plaintiff] argues that the applicable statute of limitations is one year and ninety days. But that time period, which is set forth in New York's General Municipal Law § 50-i, applies to claims against the County, not the Sheriff."); *Duryea v. Cty. of Livingston*, 06-CV-6436, 2007 WL 1232228, at *3 (W.D.N.Y. Apr. 26, 2007) ("[C]ontrary to plaintiff's claims, CPLR § 215[1] provides the statute of limitations for tort claims against a sheriff and his deputies while § 50-i sets forth the limitations period for tort claims against a county."); *Nichols v. Rensselaer Cty.*, 132 Misc.2d 489, 491 (N.Y. Sup. Ct. 1986) (rejecting plaintiff's argument that sheriff and his deputies should be considered county employees for purposes of N.Y. Gen. Mun. § 50-i because "[i]t is well-established that the filing of a notice of claim is not a required pre-condition to commencing suit against a sheriff or his deputies. . . . Since it is clear that the claims alleged herein arose out of the performance of the law enforcement duties of the office of Sheriff and/or his deputies, there

is no basis to deviate from the application of CPLR 215[1]").[10]

The Court notes that, although Plaintiff's claims for negligent supervision, NIED, and for violating N.Y. Correct. Law § 500-b are not intentional torts, CPLR § 215 governs actions against a sheriff "upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty." CPLR § 215(1); *see Brady v. Woodworth*, 17 A.D.2d 995, 995 (N.Y. App. Div. 4th Dep't 1986) ("The liability to which this short limitation period applies is coextensive with the liability against which a sheriff must be bonded."); *Jemison v. Crichlow*, 139 A.D.2d 332, 338 (N.Y. App. Div. 2d Dep't 1988) (holding that one-year limitations period applied to actions against city marshal regardless of whether the alleged misconduct was intentional and malicious so long as the marshal's "acts were committed by virtue of, or under color of, his office"), *aff'd*, 74 N.Y.2d 726 (N.Y. 1989). New York Correction Law § 500-b directs that the Sheriff "shall exercise good judgment and discretion" and "take all reasonable steps to ensure that the assignment of persons" to housing units "fosters the safety, security and good order of the jail" while concomitantly ensuring that necessary precautions are made for the safety and welfare of those in custody, especially those who may be particularly susceptible to abuse. N.Y. Correct. Law § 500-b(7)(a)(1)-(2). Therefore, Defendant Apple's alleged failure to take the necessary actions to keep Plaintiff safe constitutes an "omission of an official duty" within the meaning of CPLR § 215(1). This includes any claim related to Defendant Apple's

_____

[10]       The Court notes that it does not take a position regarding what limitations period would govern Plaintiff's claims against Albany County or any other municipal Defendant. However, it appears that the limitations period under N.Y. Gen. Mun. Law § 50-i would govern those claims. *See Ruggiero v. Phillips*, 292 A.D.2d 41, 44 (N.Y. App. Div. 4th Dep't 2002) ("[W]ith respect to an action against a municipality, [§ 50-i(1)(c)] takes precedence over the one-year period of limitations provided for in CPLR [§] 215.").

alleged failure to ensure that ACCF had proper policies in place to render appropriate medical care to the inmates in his custody because this necessarily involves the health and safety of those inmates.  *See Adams v. Cty. of Rensselaer*, 66 N.Y.2d 725, 727 (N.Y. 1985) (applying one-year statute of limitations contained in CPLR § 215 to claim against sheriff under N.Y. Correct. Law § 500-c); *accord*, *Kingston v. Braun*, 122 A.D.2d 543, 543 (N.Y. App. Div. 4th Dep't 1986); *Lederer v. Nassau Cty. Dep't of Corr.*, 122 A.D.2d 251, 252 (N.Y. App. Div. 2d Dep't 1986), *overruled on other grounds by Estate of Adkins v. Nassau Cty.*, 141 A.D.2d 603 (N.Y. App. Div. 2d Dep't 1988).

Accordingly, it follows that Defendant Apple's alleged negligence in failing to properly supervise his subordinates, particularly when he allegedly had notice of past incidents of misconduct involving corrections officers and inmates, constitutes a failure to perform his duties under N.Y. Correct. Law § 500-b(7).  *See Lederer*, 122 A.D.2d at 252 (applying one-year limitations period under CPLR § 215 to plaintiff's claim that sheriff "negligently failed to provide adequate protection" from assaults by fellow inmates).  Similarly, the Court finds that Plaintiff's NIED claim is subject to the one-year limitations period under CPLR § 215 because the allegations serving as the basis for this claim flow from Defendant Apple's alleged failure to perform his official duties.  (Dkt. No. 1, ¶¶ 134-141 [Pl.'s Compl.].)  *See McDonald v. Riccuiti*, 126 A.D.3d 954, 954 (N.Y. App. Div. 2d Dep't 2015) ("In determining which limitations period is applicable to a given cause of action, the court must look to the substance of the allegations rather than to the characterization of those allegations by the parties.").

### E.     Whether Plaintiff's Claim Under 7 N.Y.C.R.R. § 5.24 Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant Apple in his memoranda of law.  (Dkt. No. 43, Attach. 1, at

27-28 [Def. Apple's Mem. of Law]; Dkt. No. 48, at 12 [Def. Apple's Reply Mem. of Law].)  To those reasons, the Court adds the following one point.

Defendant Apple correctly points out that Plaintiff has failed to oppose his arguments in support of dismissal of this claim.  In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein. . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).  The Court finds that Defendant Apple has, at the very least, met this modest threshold burden, once again, for the reasons set forth in his memoranda of law.  In any event, the Court would still dismiss this claim even if it were to subject it to the more rigorous standard appropriate for a contested motion.

Specifically, 7 N.Y.C.R.R. § 5.24(d) states that "[n]othing in this section shall be construed as creating a private right of action for an individual who is the subject of these records or his/her personal representative."  Defendant Apple points out that, in *Davidson v. State*, 3 A.D.3d 623 (N.Y. App. Div. 3d Dep't 2004), the Appellate Division, Third Department, affirmed an award of damages to a prisoner where his medical records were improperly released in violation of 7 N.Y.C.R.R. § 5.24.  *Davidson*, 3 A.D.3d at 624.  Defendant Apple argues that this case should not be followed because it contravenes the clear statutory language contained in

subdivision (d) of 7 N.Y.C.R.R. § 5.24. However, courts have found that *Davidson* is no longer good law to the extent that it can be read to allow a private right of action because it relies on "provisions of 7 N.Y.C.R.R. § 5.24 that were eliminated by the regulation's amendments effective January 26, 2005." *McFadden v. Schneiderman*, 54 Misc.3d 1222(A), at *2 (N.Y. Sup. Ct. May 6, 2016) ("Since [subdivision (d)] denies plaintiff a private right of action for a violation of 7 N.Y.C.R.R. § 5.24, he may not pursue this action for such a violation."); *accord*, *Anthony YY. v. State*, 151 A.D.3d 1121 (N.Y. App. Div. 3d Dep't 2017). Accordingly, for all of the foregoing reasons, Plaintiff's tenth cause of action against Defendant Apple is dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Apple's motion for judgment on the pleadings (Dkt. No. 43) is **<u>DENIED</u> in part** and **<u>GRANTED</u> in part** such that the following claims against Defendant Apple are dismissed:

    a.    the First, Second, and Third causes of action against Defendant Apple in his *official capacity*;

    b.    the Fourth, Ninth, Tenth, Eleventh, and Twelfth causes of action; and it is further

**ORDERED** that the First, Second, and Third causes of action against Defendant Apple in his *individual* capacity survive his motion.

Dated: September 5, 2017
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge